ESTATE OF Roscoe YOUNG, deceased, Reverend Willie B. Young as personal representative, Plaintiff–Appellee,

v.

Bill MARTIN, David Jamrog, John Doe # 1, John Doe # 2, Defendants–Appellants.

No. 02–1762.

United States Court of Appeals, Sixth Circuit.

June 26, 2003.

Before MOORE and ROGERS, Circuit Judges, and HOOD, District Judge.*

HOOD, District Judge.

This is an appeal from the district court's denial of summary judgment for Frank Elo on grounds of qualified immunity. For the reasons discussed below, we **REVERSE** the district court's decision and **REMAND** for further action consistent with this opinion.

### I.

Roscoe Young was incarcerated in Michigan Department of Correction ("MDOC") facilities from March 1999 to November 10, 1999. He came to be incarcerated at the Gus Harrison Correctional Facility ("Harrison Facility") in Adrian, Michigan, no later than May 6, 1999. Appellant Frank Elo was the warden at the Harrison Facility during Young's incarceration.

Appellee states in his complaint that Young was a diagnosed diabetic at the time of his sentencing in March 1999 and that while he was incarcerated at the Harrison Facility he experienced severe nose bleeds, excess weight gain, dizziness, elevated blood sugar, and painful ulcerated sores on his legs and feet during his incarceration. The complaint avers that he developed a staph infection "as early as June

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

of 1999" as a result of improper treatment of the aforementioned ulcerated sores. He presented to prison medical care providers his problems.

While at the Harrison Facility, appellee alleges that Young was "routinely deprived of the proper administration and dosage of insulin required for control of his diabetes and survival" due in part to "a policy regarding the provision of only minimal medical services which policy failed to accommodate [Young's] life threatening conditions." This Health Services policy also allegedly provided for the development and use of a database by prison facilities to track the needs of chronically ill prisoners, which Plaintiff alleges was never implemented on Elo's watch at the Harrison facility.

Young allegedly spoke to his sister, Lignon Young Chandler, on a weekly basis during his incarceration and reported that he was not receiving regular doses of insulin because he could not afford to pay for the insulin and the MDOC policy required that he pay for his own insulin. In her affidavit submitted with appellee's response to the appellant's motion to dismiss and for summary judgment, Chandler stated:

> That in order to assist my brother I called the Adrian Facility and spoke with the warden there with respect to my brother's medical care. That the warden assured me that he would have someone look into the problem. However, I never received a return telephone call from the warden or anyone at the facility.

Willie B. Young, the deceased's father, also stated in an affidavit that he had contacted Elo "with respect to getting my son his necessary life sustaining care." Neither affidavit provides any further information concerning the alleged conversations between Young's family members and Elo.

Young's health continued to deteriorate during his incarceration, and he was transferred to Foote Memorial Hospital on October 21, 1999, where he underwent a variety of procedures and died on November 10, 1999 of sepsis and multiple organ failure.

In the proceedings before the district court, Elo moved for summary judgment on the basis of qualified immunity. Appellee responded in opposition, and the district court, after hearing oral argument on the issues presented, determined that questions of fact precluded granting summary judgment in favor of Elo on the basis of qualified immunity. Specifically, the district court held that, viewing the evidence in the light most favorable to Appellee, the first amended complaint sufficiently stated a policy claim and discovery was necessary to ascertain the parameters of the policy at issue, whether the policy violated Young's constitutional rights under the Eighth Amendment, and whether Elo had knowledge that the policy posed a substantial risk of serious harm. Elo's motion was denied without prejudice, and it was ordered, in relevant part, that the parties engage in limited discovery regarding Elo's personal involvement in the situation and the policies at issue.

## II.

A district court's denial of qualified immunity as to a § 1983 action is reviewed de novo. *See Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001).

Jurisdiction in this matter, if it exists, arises from 28 U.S.C. § 1291, granting jurisdiction to hear appeals from final judgments of district courts. Generally, a denial of summary judgment is not a final judgment. *Hoover v. Radabaugh,* 307 F.3d 460, 465 (6th Cir.2002); *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132

L.Ed.2d 238 (1995). However, denials of qualified immunity on summary judgment by a district court may be appealed as a collateral order where: (1) the defendant is a public official asserting the defense of qualified immunity, and (2) the issue appealed concerns not which facts the parties might be able to prove, but whether certain alleged facts reflect a violation of clearly established law. *Hoover*, 307 F.3d at 465 (*citing Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). However, circuit courts do not always have jurisdiction over interlocutory appeals from a district court denial of summary judgment on qualified immunity. *Id.* at 465. Rather, jurisdiction exists only where the district court's ruling is confined purely to questions of law. *Id.* Thus, officials may immediately appeal an adverse ruling on their defense of qualified immunity, but only if the appeal presents a "neat abstract [issue] of law rather than the question of whether the record demonstrates a genuine issue of fact for trial." *Id.* (citing *Phelps*, 286 F.3d at 298, quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998) (internal quotations and citations omitted)).

"A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman*, 150 F.3d at 563. Accordingly,

for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). Thus, for the purposes of an appeal, we accept the allegations in the first amended complaint as true and proceed to examine the legal issues.

### III.

Qualified immunity is "to ensure that before they are subjected to suit. officers are on notice [that] their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, it is taught that the "threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."[1] *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier*, 533 U.S. at 201). In order to state a cognizable claim under the Eighth Amendment concerning medical care of prisoners, an inmate must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). When inquiring into "deliberate indifference," it is taught that a court must ask both (1) if the officials acted with a sufficiently culpable state of mind and (2) whether the alleged wrongdoing was "objectively 'harmful enough' to establish a constitutional violation."[2] *Hudson v.*

---

1. However, even if the facts as alleged may establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, individual defendants may still be "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Hope v. Pelzer*, 536 U.S. 730, 752, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

2. The Supreme Court has defined deliberate indifference as a subjective awareness of a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *Farmer* teaches that an official "must both be aware of facts from

*McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992).

■ With regard to the subjective component of deliberate indifference to medical needs, this court has stated that "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994). Thus, a public official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff can demonstrate that the official is culpable because he was personally involved in the allegedly inadequate medical care provided to the deceased or that he otherwise encouraged or condoned others in providing such inadequate medical care.[3] *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). "At a minimum a plaintiff must show that the official at least implicitly authorized,

approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.1982); *see Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 206 (6th Cir.1998) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead, the liability must be based upon active unconstitutional behavior.").

■ Appellant argues that the district court's decision to deny summary judgment on qualified immunity grounds was erroneous where the only allegation of involvement in the prisoner's care was one phone call from the prisoner's relative raising concerns about the adequacy of the prisoner's health care and the existence of an allegedly defective health care policy. Elo argues that the allegations against him do not demonstrate the type of involvement necessary to state claim against a public official in his or her individual capacity for damages under § 1983. We agree.

---

which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837–38.

**3.** Elo also contends that the district court erred in determining that the plaintiff's complaint can state a policy claim against Defendant Elo in his supervisory capacity. Specifically, Petitioner alleges that the district court erred in relying on *Monell v. New York City Dept. of Social Services* to support the existence of claims premised on a policy or custom against state officials in their individual capacities because *Monell* was instead concerned with whether local governments were subject to the same immunity from suit under § 1983 as states and state actors in their official capacities. *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 663, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Whether or not *Monell* provides for such claims premised on policies and customs, Appellee has correctly responded that Sixth Circuit precedent permits a suit against Elo for his personal role in

implementing or enforcing a policy in a way that deprives an individual of his constitutional rights and that such a claim is a perfectly acceptable basis for a § 1983 suit alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, citing *Taylor v. Michigan Department of Corrections* and *Hill v. Marshall. Taylor v. Michigan Department of Corrections,* 69 F.3d 76, 81 (6th Cir.1995); *Hill v. Marshall,* 962 F.2d 1209 (6th Cir.1992). Such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities. *Hill,* 962 F.2d at 1213. As opposed to holding the officials vicariously liable for the misconduct of others, plaintiffs may hold these officials liable for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights.

Appellee in this matter has failed to demonstrate with even the barest facts that Elo had the personal involvement necessary to establish liability for the death of Young or that he otherwise authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending individuals. The affidavits of Young's sister and father describe nothing more than vague and generalized concern for Young's well-being and medical care. Thus, while Elo may have spoken to Young's relatives, the affidavits offer no evidence that he became personally aware of the specific concerns about Young's insulin needs and alleged deprivation upon these phone calls.

Further, Elo has submitted an affidavit stating that he had no role in the day-to-day operation of the health service areas in the Harrison Facility or elsewhere, that he did not provide or actually oversee the care provided to prisoners at the facility, that he had no knowledge of the decisions made regarding the health care provided to Young, and that he did not participate in making those decisions. Rather, those responsibilities were apparently reserved to the Bureau of Health Care Services of MDOC and to Bill Martin, director of the MDOC.

Appellee attempts to draw a comparison between Elo's position in this matter and that of the deputy superintendent in *Hill*, where a prisoner's specific complaints were made to the deputy superintendent of treatment and ignored, the prisoner continued be deprived of his medication, and all the while the deputy superintendent charged with dealing with such complaints had long been aware of the types of problems alleged and did nothing to remedy the problems caused by the actions of a specific subordinate nurse. *Hill*, 962 F.2d at 1210–1212. While Appellee has alleged that Elo became aware of concerns with regard to Young's medical care upon receiving phone calls made by the decedent's family, we are not convinced that the evidence even hinted at the severe medical risks of which Appellee now complains. In the absence of direct and more detailed communication of Young's serious medical needs to Elo, such as those made to the deputy superintendent in *Hill*, we are hesitant to say that Elo was personally involved in the medical care of Young or that he otherwise "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874.

## IV.

Elo's only connection to the events alleged by Plaintiff stems from phone calls from decedent's sister and father stating their general concern with the health care received by Roscoe Young during his incarceration at the Harrison Facility. Young's relatives have not established that they provided more specific information to Elo regarding Young's serious medical needs. Elo did not administer medical care to Young himself nor was he charged with the administration of health care in the facility on his watch as warden. Elo was not charged with developing or implementing the Health Care Policy in the Harrison facility nor, apparently, did he play a role in developing or implementing the policy.[4] Effectively, Plaintiff has failed

4. The MDOC Policy Directive places responsibility in the Bureau of Health Care Services (BHCS) "for the Department's health services program" and directs BHCS to "coordinate and monitor all services." Under the Policy Directive, wardens are given the responsibility, in contrast, to make emergency health care telephone numbers available to staff, and to insure that writing materials are available to prisoners to enable them to fill out Health Care Request forms. It does not follow from the presence of such limited responsibilities

to present any evidence of the personal involvement by Elo necessary to establish a constitutional violation for deliberate indifference to medical needs under the Eighth Amendment.

As Appellee cannot state a constitutional violation against Elo, as a matter of law summary judgment on grounds of qualified immunity may appropriately be granted. Accordingly, we **REVERSE** the district court's decision and **REMAND** for further action consistent herewith.

MOORE, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. The district judge properly denied qualified immunity to Warden Frank Elo. There is a genuine issue of material fact whether Elo was involved in implementing the prison policy that delivered substandard medical care to prisoners, thereby posing substantial risk of serious medical harm, such as Roscoe Young's death. Most importantly, in light of Young's sister's telephone conversation with Elo informing Elo of inadequate prison medical care for this diabetic prisoner, there is a genuine issue of material fact whether Elo was personally involved in the delivery of inadequate care to Roscoe Young that violated Young's Eighth Amendment rights. There are material fact questions regarding Elo's personal knowledge of Young's grave condition after Elo's telephone conversation with Young's sister and regarding Elo's subsequent actions or inactions. I would affirm the district court's denial of qualified immunity for Elo.

under the policy directive that Elo had any responsibility for the medical decisions or policies at issue in this case.