**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0714n.06

**No. 09-2400**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Oct 18, 2011***

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| STEPHEN LAMARR HALL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MILLICENT WARREN, et al., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | **OPINION** |
| | ) | |

Before: **MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Stephen Lamarr Hall is a prisoner in the custody of

the Michigan Department of Corrections ("MDOC"). He brought this *pro se* civil rights action under

42 U.S.C. § 1983 against a group of prison officials, alleging that they unreasonably exposed him

to Environmental Tobacco Smoke ("ETS") despite an MDOC medical notice requiring that he be

placed in tobacco-free housing. Hall appeals the district court's dismissal of his claims against one

of the officials, and the court's grant of summary judgment to the others. For the following reasons,

we **AFFIRM** in part and **REVERSE** in part and **REMAND** for further proceedings.

**I. FACTUAL BACKGROUND**

From July 2004 to December 2006, Hall was an inmate at Michigan's Bellamy Creek

Correctional Facility. On April 15, 2005, his medical provider, Dr. Scott Holmes, issued an MDOC

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Special Accommodation Notice ("SAN") stating that Hall required "Tobacco free housing" and a "Bottom Bunk." These housing requirements were specifically designated as "Permanent" on the SAN. MDOC medical records indicate that Hall was treated for shortness of breath "secondary to second hand smoke" and was prescribed Albuterol, a bronchodilator commonly used to treat lung diseases and other breathing ailments.

On December 22, 2006, Hall was transferred from Bellamy Creek to Thumb Correctional Facility ("TCF"). Despite the "Permanent" SAN requiring that Hall be placed in tobacco-free housing, Hall was placed in the Cord Unit, which was not tobacco free. In an affidavit submitted to the district court, Hall claimed that the smoke in his new unit was intolerable, at times he thought he was going to pass out, and he stayed very sick. When Hall initially discussed a transfer with Michael Markee, the Assistant Resident Unit Supervisor at the Cord Unit, Hall recalled that Markee seemed distant and not very interested and told Hall to KITE[1] him to be placed on his list for a transfer.

On December 23, Hall sent a KITE to Markee, explaining that he had "a tobacco-smoke free accommodation" that required he be placed in a housing unit free of all environmental tobacco smoke (ETS). The KITE asked Markee for a transfer to a tobacco-free unit because he was having difficulty breathing and chest pains. On the same day, Hall also sent a KITE to Fred Folts, the Assistant Resident Unit Supervisor at the Burns Unit, which was the tobacco-free unit at TCF. Hall's KITE to Folts explained that he was told by one of the unit officers to KITE Folts and Markee

---

[1] A KITE is a written form issued by MDOC that inmates use to communicate with corrections staff.

to be moved to a non-smoking unit because he had a tobacco-smoke free permanent accommodation notice to be placed in the Burns unit. Hall requested Folts to "please help" because he was having a terrible time breathing with chest pains. Hall also sent KITES to the prison's health care unit on December 23 and 25, requesting to see the doctor and be transferred to a tobacco-free unit.

Hall apparently received no response from Markee or Folts. A few days later, on December 29, Hall sent a handful of additional KITES to several other prison officials. One was sent to Geraldine Wilson, the Resident Unit Manager:

> I believe (ARUS) Markee and (ARUS) Folts are purposely not responding to my KITES to be moved to a smoke free housing unit as I suffer from asthma symptoms and cigarette smoke exacerbates my condition. I have a medical accommodation notice that is not being honored. Will you please help me[?]

R27-2 at 8. He also sent a KITE to Katherine Corrigan, the Assistant Deputy Warden:

> I know that you are not the person to write to about this kind of problem. However, when I attempted to correct the matter by contacting both (ARUS) Markee [and] (ARUS) Folts, and when they failed to respond I just wrote (RUM) Wilson, and (Warden) Warren. I have very serious medical problems that require I be housed in a tobacco-smoke free environment. I also have an accommodation notice in my prisoner file stating same. Would you please have me removed to a non-smoking unit, as I'm having a very difficult time here.

*Id.* at 9. Also on December 29, Hall sent a KITE to Millicent Warren, the Warden at TCF:

> Will you please remove me from this unit as I have (asthma) and cigarettes make it extremely difficult to breathe, chest pains, headaches, dizziness. I have a permanent housing accommodation for me to be placed in another unit. I'm getting very ill here, please have me sent over to Burns Unit immediately.

*Id.* at 10. Hall sent follow-up KITES to Markee and Folts also on December 29, reiterating that the SAN requiring tobacco-free housing was not being honored and notifying them that he was writing to their supervisors (i.e., Wilson, Corrigan, and Warren) regarding the issue. On the same day, Hall

sent another KITE to the heath care unit, repeating his need to be moved and requesting medical staff to intervene on his behalf.

At some point in early January 2007, Hall discussed his continuing need for tobacco-free housing with Markee. Hall followed-up on that conversation on January 4, with a KITE to Markee:

> After our conversation I expected you to have contacted (ARUS) Folts by now to have me moved. What's the problem with me getting moved out of this unit[?] It has become clear you are not going to help me move and neither is anyone else.

*Id*. at 11. Hall also sent a similar follow-up KITE to Folts on the same day:

> I'm writing to find out whether or not you heard anything from (ARUS) Marke [sic] or anyone else I've attempted to contact. Markee said he was going to talk to you and have me moved over to your unit, will you please call him for me! I am so sick!

*Id.* at 12. And he sent another follow-up KITE to Wilson:

> I have been trying to get moved from this unit since my coming to this facility 12/22/06. Will you please do something to help me get moved to a non smoking unit[?] After all, everyone tells me there is no smoking in any government buildings and no one will move me, maybe you will!

*Id.* at 13. Hall sent a follow-up KITE to the health care unit on the same day, and submitted more formal requests for medical treatment on January 6 and 11.

In an affidavit submitted to the district court, Markee acknowledged reviewing Hall's record in early January 2007 and noticing the SAN requiring tobacco-free housing. He also recalled seeing Hall on January 9, calling Folts about the SAN he noticed in Hall's file, and Folts telling him that he could not move Hall to the top of the waiting list because all of the units are designated as smoke free and he could not remove other inmates who had waited their turn to get into the Tobacco Free

Unit. Folts, however, submitted an affidavit contradicting Markee's account, claiming that he did not recall being made aware of Hall's request to move to the Tobacco Free Unit in January 2007.

On February 28, Hall sent additional KITES to Folts and Wilson reiterating his request to be transferred to a tobacco-free unit. On March 1, he sent a similar KITE to Corrigan and another one to Wilson. The KITE to Wilson read: "I really don't think you will answer me but . . . please know I have tried everything to get you people to respond to my KITES and I continue to be denied--I won't be trying again. I still can't breathe!" *Id*. at 17.

On March 13, Hall filed a formal grievance with prison officials pursuant to MDOC's three-step grievance procedure. In it, Hall claimed that attempts were made to resolve this matter by speaking with the ARUS about a transfer to a smoke free unit. Because nothing was done to date, Hall said he was compelled to grieve the matter because he was sick with difficult breathing and pain. He continued:

> I have medical problems that prohibit me from being exposed to cigarette smoke for which I was given a permanent tobacco free housing accommodation ordered by Dr. Scott L. Holmes. I arrived at this facility 12/22/06 and I am still being housed in a smoking unit, where I have been suffering from breathing problems that are becoming more serious by the day. I have exercised patience and I am now suffering the consequences for it. I need to see the doctor and be moved immediately. The ARUS in this unit has known of my condition since my arrival as I have made several requests to be moved having been told there are no beds ready. This grievance is specifically directed at Mr. Markee ARUS for Cord [Unit] that has a smoke free accommodation and a signed smoke free procedure form in my file.

R27 at 42.

Wilson was the initial Stage I respondent to Hall's grievance. Her investigation concluded that there was a permanent order for Hall to be placed in a tobacco free unit. She noted that prison

staff was "working diligently" to accommodate Hall, but that Folts reported there were no "empties" at this time. Wilson reported that Hall was put at the top of the list. Wilson's supervisor, Corrigan, reviewed and signed the response in accordance with MDOC policy.

On March 22, Hall filed a Stage II appeal, reiterating that "smoking is prevalent throughout" his unit and that he required tobacco-free housing. After he filed his Stage II appeal, Hall was moved to the tobacco-free Burns Unit on March 24. Warren then responded to the appeal at Stage II, noting that Hall had been moved but acknowledging that he was on the waiting list a considerable length of time because he needed a lower bunk in addition to the tobacco free accommodation. Although he had been moved to a tobacco-free unit, Hall nevertheless filed a Stage III appeal. MDOC's Grievance and Appeals section responded to the Stage III appeal, concluding that the grievance had been resolved by his placement in Burns Unit.

## II.  PROCEDURAL BACKGROUND

On November 6, 2008, Hall filed this action in the Eastern District of Michigan, using the court-provided form for *pro se* prisoner civil rights complaints under 42 U.S.C. § 1983. As defendants, he named Warren, Corrigan, Wilson, Markee, and Folts. He also named Dr. Joseph Burtch, the primary healthcare provider at TCF. Hall broadly alleged that the defendants violated the Eighth Amendment by unreasonably exposing him to second hand cigarette smoke for three months, 12/22/06 to 3/24/07, despite the SAN that ordered permanent smoke/tobacco free housing. He alleged that the defendants knew of the accommodation order in his prisoner file and simply ignored the doctor's order. He claimed that he suffered injury from over exposure to second hand

smoke and sought $50,000 in compensatory damages and $500,000 in punitive damages against each

defendant.

On February 5, 2009, counsel for Warren, Corrigan, Wilson, Markee, and Folts filed a motion

for summary judgment. They argued that they were entitled to qualified immunity because there was

no evidence to support a finding of deliberate indifference to a serious medial need in violation of

the Eighth Amendment. Defendants claimed that the April 15, 2005 SAN requiring tobacco-free

housing was superceded by a subsequent SAN, dated May 18, 2006, which did not require such a

placement. Defendants also questioned the legitimacy of Hall's claims, pointing out that, although

the possession of smoking paraphernalia was permitted in the Cord Unit (i.e., it was not "tobacco

free"), smoking itself was strictly prohibited.

On February 16, the other defendant, Dr. Burtch, filed a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6). Burtch argued that dismissal of Hall's claims against him

was required for failure to exhaust administrative remedies because Hall did not specifically name

him or any other medical staff in his formal grievance as required by MDOC's grievance procedure.

Burtch was the only defendant to make this non-exhaustion argument in the district court.

Hall responded to the motion for summary judgment on March 2. He attached the numerous

KITES discussed above, which he claimed to have sent prison officials notifying them of the SAN

and requesting transfer to a tobacco-free unit. He argued that all of the defendants were liable

because they undertook no affirmative steps to address his need to be properly placed in housing

conducive to his medical condition. He specifically challenged the defendants' argument that the

tobacco-free SAN was superceded and no longer in effect, attaching MDOC Policy Directive

04.06.160, which provided that permanent SANs are valid at all facilities unless cancelled. Hall also responded to Burtch's motion to dismiss, clarifying that his claim against Burtch was based on his failure to ensure the enforcement of the SAN requiring tobacco-free housing. He attached the KITES and health care requests sent to medical staff, and argued that his claim should not be barred for failure to exhaust because, at the time of the grievance's filing, he was not aware of Burtch's name.

The case was assigned to a magistrate judge, who issued his Report and Recommendation ("R&R") on August 7, 2009. The magistrate recommended that Hall's claims against Burtch be dismissed for failure to exhaust because Hall failed to name Burtch in the grievance as required by MDOC procedures. He also recommended that Hall's claims against Burtch be dismissed, and summary judgment be granted to Warren, because they were not personally involved in the alleged unconstitutional conduct. The magistrate recommended summary judgment be granted to Corrigan, Wilson, and Markee because there was no evidence that they were deliberately indifferent to Hall's medical needs. According to the magistrate, however, a reasonable jury could find that Folts was deliberately indifferent given Markee's affidavit indicating that he notified Folts in early January regarding Hall's SAN and that Folts took no immediate action.

Folts filed an objection to the R&R within 10 days of it being filed. Hall, however, did not do so. The district court issued an order and judgment on September 21, 2009, adopting the R&R in part and rejecting it in part. First, the district court concluded that it was under no obligation to independently review the record regarding the claims against defendants Burtch, Warren, Corrigan, Wilson, and Markee because Hall did not file any objections to the R&R. Accordingly, the court dismissed the claims against these parties for the reasons explained in the R&R. Second, the court

rejected the magistrate's recommendation that summary judgment be denied to Folts. According to the court, even assuming that Folts knew of Hall's SAN in early January, his actions did not constitute a sign of Folts' deliberate indifference; rather, the delay in accommodating plaintiff's request for the Burns Unit showed a deliberate concern on the part of Folts to accommodate both of Hall's medical related needs, his need for a bottom bunk and for a smoke-free environment. The court also concluded that there was no evidence that Hall actually suffered from a sufficiently serious medical need requiring tobacco-free housing.

On the same day the district court dismissed the case, Hall filed his untimely objections to the R&R. He alleged that he did not receive the R&R until September 8 and that he had ten days to respond to the R&R after that date. He also filed a motion for enlargement of time to object to the magistrate's R&R. On September 25, the district court issued an order acknowledging receipt of Hall's motion and objections, and noting that they appeared to have been prepared before receipt of the district court's order dismissing the case. The court granted the motion for additional time, expressly stating that it would consider plaintiff's objections. The court construed the objections as a motion for reconsideration and carefully reviewed the objections. The objections did not persuade the district court to change its previous disposition. Hall filed a timely notice of appeal on October 20, 2009.

### III. ANALYSIS

### A.      Hall's Objections to the Report and Recommendation

As a preliminary matter, we briefly consider Hall's argument that the district court erred by treating his objections to the magistrate's R&R as a motion for reconsideration. Hall contends that

his objections should have been considered timely under 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b) because he did not receive the R&R until September 8, 2009. Although Hall

believes he was prejudiced by the district court's decision to treat his objections as a motion for

reconsideration, our review of the record convinces us otherwise. The district court exercised its

discretion to enlarge the time for Hall to file his objections. *See Patterson v. Mintzes*, 717 F.2d 284,

286–87 (6th Cir. 1983) (holding that a district court may accept and consider objections filed beyond

limitations period). The court carefully reviewed plaintiff's objections and came to the conclusion

that they were the same arguments considered and rejected by the magistrate judge and the court.

The district court construed the objections as a motion for reconsideration simply because the case

had been dismissed. Given that all of Hall's objections to the R&R were considered by the district

court, Hall has failed to establish prejudicial error resulting from the district court's treatment of his

objections.

**B.      Claims Against Defendant Burtch**

The district court dismissed Hall's claim against Burtch for failure to exhaust administrative

remedies. The district court held that Hall failed to satisfy MDOC grievance procedures, which

require prisoners to name each person against whom they grieve. Hall challenges the district court's

dismissal on appeal, primarily arguing that, at the time he filled out the administrative grievance, he

did not know Burtch's name and should not be required to provide it on the grievance form because

prison officials failed to interview him as required by MDOC grievance procedures.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[p]risoners must

exhaust their administrative remedies before challenging prison conditions." *Grinter v. Knight*, 532

F.3d 567, 577 (6th Cir. 2008). As the Supreme Court explained in *Jones v. Bock*, 549 U.S. 199 (2007), "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (internal citation and quotation marks omitted). Although "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances," *id.* at 219, a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures*, Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009).

MDOC Policy Directive 03.02.130 lays out the MDOC process applicable to Hall's grievance. It specifically requires the grievance to include the dates, times, places, and *names of all those involved in the issue being aggrieved*. Neither Burtch nor any other medical official is named in Hall's grievance. Although Hall's grievance indicates that Hall wished to see a doctor, it does not allege that a medical official committed any wrongful act. Instead, the grievance is exclusively concerned with the need for a transfer to a tobacco-free unit. Hall's argument that he needed an interview to learn Burtch's name is unpersuasive given the absence of any medical-related claim in his grievance. For these reasons, the district court correctly dismissed Hall's claim against Burtch for failure to exhaust administrative remedies.

## C.      Claims Against Remaining Defendants

Hall contends that the district court erred by granting summary judgment to the remaining defendants. Summary judgment is warranted where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering

a motion for summary judgment, "the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Wexler v. White's Fine Furniture*, *Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Defendants Warren, Corrigan, Wilson, Markee, and Folts all assert entitlement to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the prison officials in this case are entitled to qualified immunity requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538–39. We may exercise our discretion to decide which inquiry to address first in light of the circumstances of the case. *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

### 1. Constitutional Violation

A prisoner alleging an Eighth Amendment claim under Section 1983 must prove two elements. The first, which is an objective inquiry, requires the prisoner to show that the official's alleged mistreatment was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

(internal quotation marks omitted). The second, a subjective component, requires him to show that the official had "a sufficiently culpable state of mind"—i.e., "one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted).

      a.      *Objective Component*

In the context of ETS claims, a prisoner establishes the objective component of an Eighth Amendment claim by showing that (i) he has an *existing* serious medical need for a smoke-free environment, *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992), or (ii) regardless of current health, the level of ETS in the prison creates an unreasonable risk of serious damage to his *future* health, *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Hall's complaint is based on the defendants' alleged disregard of his existing medical needs rather than a risk of future harm. Hall alleges that he is a chronic care patient with "serious medical needs" and has "suffered injury from over exposure to second hand smoke".

A reasonable jury could conclude that Hall had an objectively serious medical need for a smoke-free environment. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)). Hall presented medical records from June 2005 indicating that he was treated for shortness of breath secondary to second hand smoke and was prescribed albuterol. Hall also introduced a "Permanent" SAN, issued by his MDOC medical provider, specifically stating that he required "Tobacco free housing." This evidence is sufficient to create a genuine issue of material fact as to the objective seriousness of

Hall's need for a smoke-free environment. *See, e.g.*, *Jacobs v. Young*, 134 F.3d 371, 1997 WL 809925, at *2 (6th Cir. Dec. 17, 1997) (unpublished table opinion) (holding that prisoner established a genuine issue of material fact by introducing medical records indicating he had angina and emphysema and recommending he share a cell with a non-smoker).

In the district court, Defendants argued that the tobacco-free SAN was superceded by a subsequent SAN, issued on May 18, 2006, which did not list any tobacco-free housing requirement. As Hall and the magistrate pointed out, however, the applicable MDOC policy provides that permanent SANs are valid at all facilities unless cancelled. And in order for a SAN to be cancelled, there must be approval from a medical service provider after an examination of the prisoner. The record contains no evidence of any such cancellation. Hall further supported the validity of the April 2005 SAN by introducing an MDOC Special Accommodations History form, printed February 26, 2009, indicating that the tobacco-free SAN was still effective as of that date.

We invited the defendants to file a brief specifically addressing the effectiveness of Hall's medical notice purportedly requiring tobacco-free housing. They accepted our invitation and adhered to their position that the SAN is outdated and was superseded by the May 2006 SAN. However, the defendants completely failed to address—let alone refute—the applicability of the MDOC policy providing that permanent SANs remain effective unless cancelled. For these reasons, we conclude that Hall presented enough evidence to survive summary judgment on the objective component of his Eighth Amendment claim.

b.        *Subjective Component*

The second inquiry is whether there is evidence sufficient to allow a reasonable jury to conclude that each defendant acted with deliberate indifference to Hall's existing medical needs. A prison official is deliberately indifferent "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citation omitted).

Existing precedent convinces us that Hall introduced sufficient evidence of deliberate indifference to survive summary judgment given the numerous unanswered KITE notices Hall sent to the defendants notifying them of his medical condition and requesting that they comply with the SAN requiring tobacco-free housing. In *Jacobs v. Young*, a panel of this Court reversed a district court's summary judgment for prison official defendants where the plaintiff alleged deliberate indifference to his serious medical need for smoke-free housing. 1997 WL 809925, at *3. We held that the plaintiff established a genuine issue of material fact as to whether the defendants acted with deliberate indifference where the plaintiff "filed grievances complaining about being housed with smokers, and defendants denied these grievances." *Id.* As the Court concluded, this evidence suggested "that defendants were aware that [plaintiff] faced the risk of harm by being housed with smokers, yet defendants disregarded that risk." *Id.*

Our sister circuits have reached similar results. In *Murrell v. Chandler*, 277 F. App'x 341 (5th Cir. 2008), the Fifth Circuit reversed a grant of summary judgment to a group of prison officials where the plaintiff "presented evidence that he advised [the officials], either verbally or in written grievances, that the no smoking policy was not being enforced at the prison . . . and that he was having serious health problems as a result." *Id.* at 343–44. The Court concluded that "[t]his evidence create[d] a genuine issue of material fact as to whether the defendants were involved in violating [plaintiff's] Eighth Amendment right to be free of cruel and unusual punishment." *Id.* at 344. Similarly, in *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003), the Third Circuit held that the prison-official defendants were not entitled to summary judgment based on qualified immunity on a prisoner's claims that they exposed him to unreasonable levels of ETS. *Id.* at 269. The court concluded that the prisoner's allegations that he had written letters to "prison officials about his sensitivity to ETS [and] no change was made in housing conditions" was sufficient to overcome summary judgment because it "demonstrate[d] deliberate indifference on the part of prison officials." *Id.*

Like the plaintiffs in *Young, Murrell*, and *Atkinson*, Hall introduced evidence creating a genuine issue of material fact regarding whether each of the defendants knew of a substantial risk of harm to Hall and failed to take reasonable steps to abate it. As noted above, Hall produced written KITE notices sent to each prison official notifying them of his previously diagnosed medical condition and requesting that they comply with the MDOC SAN requiring tobacco-free housing.

Although several of the defendants deny receiving these KITES,[2] whether the defendants were informed of a substantial risk of harm to Hall (either by the KITES or otherwise) is a question of fact "subject to demonstration in the usual ways," *Farmer*, 511 U.S. at 842, and appropriately decided by the trier of fact.

Defendants challenge the seriousness of the risk of harm to Hall by contending that all MDOC facilities were non-smoking and that this smoking prohibition was strictly enforced. Such conclusory allegations, however, do not establish as a matter of law that the risk of harm to Hall was insignificant. Hall has produced evidence indicating that an MDOC medical provider specifically prescribed tobacco-free housing—not simply non-smoking housing—and that the defendants failed to comply with that prescription for several months despite repeatedly being made aware of it. Hall also submitted an affidavit specifically alleging in relevant part that the smoke in the Cord Unit was "intolerable" at times. Defendants certainly may argue before the trier of fact that, in light of the non-smoking policy and its alleged enforcement, the risk to Hall was "insubstantial or nonexistent," *Farmer*, 511 U.S. at 844, but their conclusory claims at this stage are insufficient to establish entitlement to summary judgment.[3]

---

[2]Corrigan and Wilson submitted affidavits denying receipt of any KITE from Hall regarding tobacco-free housing. Warren, however, submitted no affidavit denying receipt. Markee denied receiving any KITE after January 9, 2007 (without addressing whether he received any before that date), and Folts acknowledged receiving at least one of the KITES approximately two weeks before Hall filed his grievance Although Folts contended this was the first he learned of Hall's need for tobacco-free housing, Markee claimed that he informed Folts of Hall's SAN and his need in early January 2007.

[3]Similarly, the defendants might demonstrate to the satisfaction of the trier of fact that "they responded reasonably to the risk" created by Hall's housing placement and thus should "be found

Warren, who is the warden at TCF, argues that the district court's summary judgment as to her was appropriate because Section 1983 liability may not be based on a *respondeat superior* basis. Although we agree that liability may not be imputed to a supervisor based entirely upon the actions of a subordinate, *see, e.g.*, *Monell v. Dep't of Soc. Servs. of New York City* , 436 U.S. 658, 691 (1978), "this does not automatically mean that a supervisor can never incur liability under § 1983," *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995). Supervisors can be held liable for their own "active unconstitutional conduct . . . rather than on their supervision of others engaging in unconstitutional conduct." *Spencer v. Bouchard*, 449 F.3d 721, 730 (6th Cir. 2006).

Hall claims that Warren personally failed to transfer him to tobacco-free housing despite receiving a written KITE alerting her to Hall's serious medical condition and the need for a transfer. This was not a "vague and generalized" notice insufficient to notify a warden "of the specific concerns about [a prisoner's medical] needs and alleged deprivation." *Estate of Young v. Martin*, 70 F. App'x 256, 261 (6th Cir. 2003). Rather, it clearly documented his medically prescribed need for tobacco-free housing and requested Warren to effectuate a transfer to the Burns Unit because he was getting very ill. Warren has failed to introduce any evidence establishing her lack of involvement in making or overseeing transfer decisions at TCF. Taken in the light most favorable

---

free from liability." *Farmer*, 511 U.S. at 844. For example, Markee might argue that he notified Folts immediately upon learning of the tobacco-free SAN, and Folts might claim that he could not immediately place Hall in tobacco-free housing because of his additional need for a lower bunk. But again, the record as it exists now is not sufficiently clear to establish as a matter of law that any of the defendants acted reasonably in response to the alleged risk of harm.

- 18 -

to Hall, this record is sufficient to create a genuine issue of fact as to whether Warren was subjectively aware of the risk of harm to Hall.[4]

In sum, we express no view as to the ultimate merits of Hall's claim that each of the defendants acted with deliberate indifference. At this stage, however, we are required to view the facts in the light most favorable to Hall, and genuine issues of material fact exist as to whether (i) Hall had an objectively serious medical need for tobacco-free housing and (ii) each of the defendants subjectively knew that Hall faced a substantial risk of serious harm and recklessly disregarded that risk by failing to take reasonable measures to abate it.

### 2.     Clearly Established Right

Because there are genuine issues of material fact as to whether the defendants committed a constitutional violation, we reach the second question—whether the right was clearly established at the time of the alleged violation. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

---

[4]Even if Hall's claim against Warren were based on her supervisory role, Warren could still be held liable if she "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of [an] offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The unanswered KITES could lead a reasonable juror to conclude that Warren knowingly acquiesced in her subordinates' refusal to transfer Hall to a tobacco-free unit. For this additional reason, Warren is not entitled to summary judgment based on her supervisory position.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court recognized an Eighth Amendment claim based on a prison official's deliberate indifference to a prisoner's existing serious medical needs. As the Court explained,

> deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.* at 104 (internal citations, footnotes, and quotation marks omitted).

In *Hunt v. Reynolds*, we applied this line of reasoning in the ETS context, holding that a prisoner with a serious medical need could state an Eighth Amendment claim based on exposure to ETS. 974 F.2d at 735. Other circuits took the same approach, recognizing that *Estelle* clearly established ETS claims of deliberate indifference based on a prisoner's existing serious medical needs. *See, e.g.*, *Atkinson*, 316 F.3d at 268; *Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995). And in 2002, we affirmed a judgment and damages in favor of a Michigan prisoner alleging that exposure to ETS constituted deliberate indifference to his serious medical needs. *See Reilly v. Grayson*, 310 F.3d 519, 521 (6th Cir. 2002); *see also Talal v. White*, 403 F.3d 423, 427–28 (6th Cir. 2005) (reversing dismissal of Eighth Amendment claim based on prisoner's exposure to ETS).

In light of this well-established authority, Hall's allegations, if true, state a violation of the Eighth Amendment that was apparent at the time of the defendants' alleged wrongful conduct. Consequently, Hall has satisfied the second requirement to overcome the defendants' motion for summary judgment based on qualified immunity.

## CONCLUSION

For the aforementioned reasons, we **<u>AFFIRM</u>** the district court's dismissal of Hall's claims against Burtch, but **<u>REVERSE</u>** the district court's summary judgment on the claims against Warren, Corrigan, Wilson, Markee, and Folts, and **<u>REMAND</u>** for further proceedings consistent with this opinion.