RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0049p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――――

SHANNON EARL TROCHE,

*Plaintiff-Appellant,*

*v.*

No. 15-3258

MICHAEL CRABTREE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati
No. 1:12-cv-00176—Timothy S. Black, District Judge.

Decided and Filed:  February 25, 2016

Before:  MERRITT, BATCHELDER, and DONALD, Circuit Judges.

―――――――――――

**COUNSEL**

**ON BRIEF:**  Neal Shah, Steven T. McDevitt, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant.  Caitlyn A. Nestleroth, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

―――――――――――

**OPINION**

―――――――――――

BERNICE BOUIE DONALD, Circuit Judge.  Shannon Troche ("Troche") appeals the district court's summary judgment decision that dismissed his 42 U.S.C. § 1983 civil action filed against the defendant, Michael Crabtree ("Crabtree"), alleging violations of the Eighth and Fourteenth Amendments.  The district court granted summary judgment because it found that Troche failed to exhaust his administrative remedies prior to filing suit.

1

For the reasons set forth below, we disagree and **REVERSE** the judgment of the district court.

I.

On August 20, 2001, Troche, an inmate in the Southern Ohio Correctional Facility (SOCF) alleges that he was severely beaten, without provocation, by Ohio Correctional Officer, Crabtree. Troche alleges that Crabtree, who was supervising him at the time, ordered him to clean brooms in a secluded pan room. Once in the pan room, Troche alleges that Crabtree choked and assaulted him. As a result, he alleges that he sustained multiple injuries that required medical treatment. Troche further alleges that after he received treatment for his injuries, he was placed in isolation and deprived of food for two weeks.

On the same day Crabtree assaulted him, Troche alleges that he submitted an Informal Complaint Resolution (ICR), which initiated the Ohio three-step grievance procedure. *See* Ohio Admin. Code 5120-9-31(K)(1). Troche never received a response to his ICR. Therefore, Troche alleges that he moved to the second step of Ohio's grievance procedure and submitted a notification of grievance form to the inspector of institutional services (IIS). *See* Ohio Admin. Code 5120-9-31(K)(2). Troche again received no response, so he alleges that he sent, via an internal prison mail system, correspondence to prison personnel to inquire about the status of his grievance. After receiving no response for the third time, he filed a § 1983 civil action in the Southern District of Ohio alleging violations of his Eighth and Fourteenth Amendment rights.

On July 25, 2014, Crabtree filed his first motion for summary judgment, contending that Troche failed to satisfy the Prison Litigation Reform Act's (PLRA) requirement that he exhaust his available administrative remedies prior to filing suit in federal court. (Appellant Br. 2.); *see* 42 U.S.C. § 1997e(a). In support of his motion, Crabtree submitted two declarations from the IIS at the SOCF, Linda Mahlman, who alleged, in pertinent part, that: (1) Troche had not filed any proper informal complaints nor any other grievance forms regarding the alleged incidents of August 20, 2011; (2) Troche had filed two complaints days after the incident, however, they were improperly submitted because he had not submitted an informal complaint to Crabtree's direct supervisor or the staff member most directly responsible for the incident, as is required by

the grievance procedure; (3) Inspector Mahlam had no record of receiving a request from Troche asking for a notification of grievance form; and (4) Inspector Mahlam investigated the incident and determined that his complaints were without merit.

In opposition to Crabtree's first motion for summary judgment, Troche also submitted his own declaration. In it, he stated that prior to filing his lawsuit, he had followed the three-step grievance procedure, and that he did not write the ICRs that Inspector Mahlman's declaration claimed he had improperly submitted.

On January 12, 2015, the Magistrate Judge issued a Report and Recommendation recommending that the district court grant Crabtree's motion for summary judgment. With respect to the exhaustion of administrative remedies issue, the Magistrate Judge determined that Troche's declaration sufficiently created a factual dispute as to whether he completed the first two steps of Ohio's grievance procedure. But, even if Troche did not receive a response to his step two grievance, the Magistrate Judge reasoned that he should have still filed a step three appeal "despite the alleged failure of the SOCF prison officials to respond to his earlier filings." Consequently, the Magistrate Judge found Troche's failure to file an appeal necessitated a finding that he failed to exhaust the administrative remedies available to him.

On February 10, 2015, the district court adopted the Magistrate Judge's Report and Recommendation and granted Crabtree's motion for summary judgment. The case was dismissed with prejudice. This timely appealed followed.

II.

"We review de novo a district court's grant of summary judgment." *Siggers v. Campbell*, 652 F.3d 681, 691 (6th Cir. 2011) (quoting *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (internal quotation marks omitted)). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Cook v. Caruso*, 531 F. App'x 554, 559 (6th Cir. 2013) (citing *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1093 (6th Cir.1998)). "In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (internal quotation marks omitted).

The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (internal quotation marks omitted)). "The court considering a motion for summary judgment must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in the light most favorable to the party opposing the motion." *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (internal quotation marks omitted). We must also be mindful of the fact that we cannot weigh the evidence or make credibility determinations. *See id.*

Non-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on Crabtree. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). Thus, summary judgment is appropriate only if Crabtree establishes the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Id.* (quoting Fed.R.Civ.P. 56(a)).

III.

Section 1997e of the PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although prisoners "are not required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *id.* at 211.

In order to comply with the PLRA's exhaustion requirement, an inmate may only exhaust his claim by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure to permit prison officials to review and, if necessary, correct the grievance 'on the merits.'" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)); *see also Woodford*, 548 U.S. at 92 ("Proper exhaustion demands compliance with an agency's deadlines . . . because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

In Ohio, prisoners must follow a three-step grievance procedure. *See* Ohio Admin. Code 5120-9-31(K). First, within fourteen calendar days of the incident, inmates must "file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code 5120-9-31(K)(1). "If the inmate has not received a written response from the staff member within a reasonable time, the inmate should immediately contact the inspector of institutional services either in writing or during regular open office hours." *Id.* If the inmate is not provided a response by the end of the fourth day, "the informal complaint step is automatically waived." *Id.*

Second, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint procedure has been waived, the inmate may obtain a notification of grievance form from the inspector of institutional services," which must be filed "by the inmate no later than fourteen calendar days from the date of the informal complaint response or waiver of the informal complaint step." Ohio Admin. Code 5120-9-31(K)(2). "Grievances must be filed by the inmate no later than fourteen calendar days from the date of the informal complaint response or waiver of the informal complaint step." *Id.* Once received, "the inspector of institutional services shall provide a written response to the grievance within fourteen calendar days." *Id.* "The inspector of institutional services may extend the time in which to respond, for good cause, with notice to the inmate;" however, "any extension exceeding twenty-eight calendar days from the date the response was due must be approved by the chief inspector or designee." *Id.*

Third, "[i]f the inmate is dissatisfied with the disposition of grievance, the inmate may request an appeal form from the inspector of institutional services." Ohio Admin. Code 5120-9-31(K)(3). The appeal must then be filed with the office of the chief inspector within fourteen calendar days of the date of disposition of grievance. *Id.*

Since the district court dismissed this case on summary judgment, we must examine Troche's declaration—because it was the only "evidence" submitted with his Response to Crabtree's summary judgment motion—and determine adequately if it creates a genuine issue of material fact as to whether Troche adequately complied with Ohio's three-step grievance procedure. In his declaration, Troche alleges that the sequence of pertinent events that led to him ultimately filing his § 1983 civil action was as follows:

(1) On August 20, 2011, Troche submitted an ICR to the "shift supervisor/captain" that was on duty, and a week later asked the "shift supervisor/captain" for a response;

(2) "About a week later," Troche asked the "shift supervisor/captain" for a response and also submitted a notification of grievance form to the IIS, presumably Inspector Mahlman;[1]

(3) After an unspecified period of time elapsed without receiving a response, Troche contacted the IIS and inquired about the status of his grievance and also sent, via an internal prison mailing system, a letter regarding the circumstances which led to his assault, his subsequent placement in isolation, and the treatment he received after his assault;

(4) After receiving no response, Troche did not pursue step three of the grievance procedure.

(Page Id # 326-28.)

The district court determined, and we agree, that Troche's declaration sufficiently created a factual dispute as to whether he satisfied the first two steps of the grievance procedure. (*See* Page Id # 358.) Although Inspector Mahlman's declaration alleges that Troche failed to properly comply with any step of the grievance procedure, and Troche does not have any documents proving that he did, Troche's declaration is sufficient to withstand summary judgment as to the first two steps of Ohio's grievance procedure.

However, we part company with the district court with respect to its determination that Troche was mandated, under Ohio's three-step grievance procedure, to file an appeal to the office of the chief inspector. *See* Ohio Admin. Code 5120-9-31(K)(3). The Magistrate Judge's analysis of this issue is as follows:

> Defendant Crabtree is entitled to summary judgment because there is no genuine dispute of material fact about whether plaintiff pursued step three of the ODRC grievance process and, therefore, failed to exhaust his administrative remedies. Under step three, plaintiff was required to appeal to the office of the chief inspector within two weeks of receiving a response to his step two formal grievance . . . Assuming plaintiff did not receive a response to his informal complaint or grievance as he alleges, nothing prevented plaintiff from pursuing step three of the inmate grievance procedure . . . Plaintiff acknowledges that he

---

[1]The actual sequence of events is unclear. Troche's declaration states that "[p]ursuant to step two of the grievance process, I grieved to the Inspector of Institutional Services ("IIS") and asked for the IIS to have the Shift Supervisor/Captain respond to my complaint about a week after making my informal complaint." [R. 50-1 at 326]. What is clear, for the purposes of summary judgment, is that Troche never received a response to these requests and that he did his best to satisfy the requirements of the grievance procedure.

did not pursue step three of the inmate grievance procedure. As it is undisputed that plaintiff did not file an appeal to the chief inspector before he filed the lawsuit, he has failed to exhaust his administrative remedies under the PLRA and Defendant Crabtree is entitled to summary judgment.

> To the extent plaintiff contends he could not complete the grievance process because SOCF officials failed to timely respond at steps one and two, making further administrative remedies unavailable or futile, this argument is unavailing.

*Troche v. Crabtree*, No. 1:12-CV-176, 2015 WL 160717, at *4 (S.D. Ohio Jan. 12, 2015), *report and recommendation adopted*, No. 1:12-CV-176, 2015 WL 541931 (S.D. Ohio Feb. 10, 2015) (citations and footnotes omitted).

We disagree. Under Ohio Administrative Code 5120-9-31(K)(1), an inmate is statutorily authorized to proceed to step two of Ohio's grievance procedure if he does not receive a response to his informal complaint within a "reasonable time." However, such authorization is not granted to inmates who fail to receive a response to a notification of grievance form at step two of the grievance procedure. *See* Ohio Admin. Code 5120-9-31(K)(2). Although step two of the grievance procedure requires the IIS to "provide a written response to the grievance within fourteen calendar days of receipt," it imparts no authorization to proceed to step three of the grievance procedure to inmates who never receive a response. *Id.* Moreover, the fact that step one instructs inmates to proceed to step two after a "reasonable time," but step two does not, suggests that inmates are foreclosed from proceeding to step three until they receive a response to their step two grievance. Lastly, the Magistrate Judge's conclusion that Troche was obligated to "file an appeal of the disposition of [his] grievance" does not make sense. Troche alleges that he never received a response to his step two grievance, so he had nothing to appeal. In the absence of any statutory instruction, Troche proceeded logically, as his declaration alleges that he sent a letter to SOCF staff inquiring about the status of his grievance. (Page Id # at 327.) In the end, it cannot be said that an inmate did not exhaust his administrative remedies because he failed to do something not specified, outlined, or required by his prison's grievance procedure.

In the Report and Recommendation, the Magistrate Judge heavily cited our ruling in *Risher,* 639 F.3d at 238–40 (6th Cir. 2011), to support her conclusion. We respectfully disagree with the Magistrate Judge's interpretation of *Risher*. Not only is *Risher* factually distinguishable

from the present case, but its reasoning actually supports our holding that Troche's declaration sufficiently creates a genuine issue of material fact regarding whether he exhausted his available administrative remedies.

*Risher* involved the Bureau of Prisons' four-tier grievance procedure. *Id.* The plaintiff, a federal inmate, did not receive a timely response at tier three, but he nevertheless filed a tier four appeal. *Id.*; *see also* 28 C.F.R. § 542.10(a). He did so pursuant to a Bureau of Prisons' policy that read, "if the inmate does not receive a response within the time allotted for a reply . . . the inmate may consider the absence of response to be a denial at that level." *Risher,* 639 F.3d at 239 (brackets and internal quotation marks omitted). However, tiers three and four of the Bureau of Prisons' grievance procedure required inmates to submit the filings and attachments from the previous level. *Id.* at 238–39.

Since the inmate did not receive a response to his tier three appeal, he did not have the required paperwork to file a tier four appeal. *Id.* Consequently, his tier four appeal was rejected; however, he was instructed to resubmit it with the required paperwork. *Id.* He decided not to resubmit the appeal and instead opted to file suit. *Id.* The district court dismissed the case on summary judgment because it found that the inmate failed to properly exhaust his administrative remedies because the inmate should have sought copies of the required documents and resubmitted his tier four appeal. *Id.* at 239. We reversed. *Id.* at 241. We found that the inmate complied with all the deadlines, and that the prison did not comply with its own regulations in failing to timely provide the inmate with a tier three response. *Id.* at 240–41. Therefore, after submitting his tier four appeal, the inmate had satisfactorily exhausted his administrative remedies.

The Magistrate Judge interpreted *Risher* to require Troche to treat SOCF's failure to respond to his step two grievance as a denial. However, all prison grievance procedures are not made alike, and what a prisoner is required to do by one grievance procedure to exhaust his administrative remedies is not necessarily required by another. Like the inmate in *Risher*, who did not receive a response to his tier three grievance, Troche did not receive a response to his step two grievance. However, the grievance procedure at issue in *Risher* instructed inmates to treat a prison's failure to respond as a denial. *See id.* In contrast, the grievance procedure at

issue in this case only instructs inmates to treat non-responses at step one as a denial.  It says nothing about non-responses at step two.  The difference is dispositive.

Accordingly, in the absence of such language, we cannot find that Troche was required to file a step three appeal to comply with the PLRA's requirement that he exhaust his administrative remedies prior to bringing his § 1983 civil action.  As we stated in *Risher*, "When pro se inmates are required to follow agency procedures to the letter in order to preserve their federal claims, we see no reason to exempt the agency from similar compliance with its own rules." *Id*. at 241.

IV.

We **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.