**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0400n.06

**No. 15-4201**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 15, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAMERON D. GARNER; CHRISTINA L. GARNER; AUDREY M. MORELAND; CHARLES D. MORELAND; J.D.G.; DREAMA K. BAKER, | ) ) ) ) | |
| Plaintiffs-Appellants. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| JESSICA HARROD; LICKING COUNTY DEPARTMENT OF JOB & FAMILY SERVICES, | ) ) | |
| Defendants-Appellants. | ) | OPINION |

---

BEFORE: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This case arises out of the alleged abuse of 4-year-old A.M., who, through his mother Jessica Harrod, alleged that he was inappropriately touched by his step-grandfather, Cameron Garner. Various charges stemmed from the investigation of this allegation. A grand jury returned indictments against Cameron Garner for gross sexual imposition and Christina Garner[1] and Audrey Moreland for child endangering. Prior to trial, the prosecutor voluntarily dismissed the charges against Christina Garner and Audrey Moreland, and ultimately, the state court judge dismissed the charges against Cameron Garner following a determination that A.M.'s prior statements were hearsay and inadmissible. The Garners, Moreland, and several others brought suit under 42 U.S.C. § 1983 against various

---

[1] Ms. Garner is sometimes referred to as "Christina" and sometimes "Christine." We refer to her as "Christina," as her name appears on the case docket.

parties involved in the investigation and prosecution, alleging the violation of their constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, as well as claims for defamation, malicious prosecution, false arrest, false imprisonment, gross negligence, negligent and intentional infliction of emotional distress, and loss of consortium. The district court granted summary judgment in favor of the defendants. We affirm.

I.

On February 25, 2012, Jessica Harrod reported allegations of sexual abuse on behalf of her four-year-old son, A.M, to the Muskingum County Sheriff's Office. According to Harrod, A.M. told her that "Pop Pop"—believed to be A.M.'s step-grandfather Cameron Garner—had touched him on the penis and that "Pop Pop" had also shown his penis to A.M. Harrod informed Deputy Brad Shawger that she was not in contact with her mother, Christina Garner, or her step-father, Cameron Garner,[2] but that A.M. visited her grandmother, Audrey Moreland. Harrod further reported that Audrey Moreland admitted that she had taken A.M. to visit the Garners without Harrod's permission.

After the meeting, Shawger contacted Muskingum County Detective Fred Curry and then Muskingum County Children Services ("MCCS"). MCCS caseworker Mindy Darst advised Shawger to refer the case to Licking County Children Services ("LCCS") due to A.M.'s residency. After Darst contacted LCCS to transfer the case, LCCS caseworker Amy Reedy took over A.M.'s case. Within a few days, she interviewed A.M. concerning the sexual abuse allegations.[3] During the ten-to-fifteen-minute interview, A.M. told Reedy that "Pap"—or "Pap Pap" or "Paw Paw"—had touched and tickled his penis and that he had tickled "Pap's" penis.

---

[2] In 2003, Cameron Garner pled guilty to Importuning for making sexual comments and engaging in inappropriate sexual behavior in Harrod's presence when she was a young girl. Harrod informed Shawger that because her mother stayed with Cameron Garner afterwards, she has no contact with them.

[3] Reedy never recorded her interviews, including with A.M.

Based on questioning about who else lived with "Pap," Reedy was able to confirm that A.M. called Cameron Garner "Pap."[4] A.M. also accurately identified his age, colors, and body parts on an anatomically correct drawing of a nude male preschool-aged child.

While Reedy was conducting her investigation on behalf of LCCS, Curry continued his investigation on behalf of the Muskingum County Sheriff's Office. Curry interviewed Audrey Moreland on February 29, 2012. Moreland admitted that although Harrod told her that she did not want Cameron Garner to spend any time with A.M., she brought A.M. to the Garners on several occasions, including an overnight stay. During this interview, Moreland doubted the truthfulness of the allegations against Cameron Garner and expressed concern about Harrod's boyfriend and Harrod. Moreland suspected Harrod's boyfriend was the culprit. Curry next contacted Cameron Garner, who initially agreed to an interview. Mr. Garner, however, failed to appear for this interview, which, according to Christina Garner, was based on the advice of their attorney.

In early March 2012, Curry met with Muskingum County Prosecutor D. Michael Haddox, who, based on Curry's findings and Reedy's interview with A.M., decided to present the case to a grand jury. The grand jury returned indictments against Cameron Garner for two counts of gross sexual imposition and against Christina Garner and Audrey Moreland for child endangering. Warrants were issued, and the three individuals were arrested. After this point, prosecutor Ronald Welch handled the case. The child endangering charges against Christina Garner and Audrey Moreland were dismissed shortly before trial. The charges against Cameron Garner were likewise dismissed based on the trial court's finding that A.M. was incompetent to testify and that his statements to Harrod were not admissible.

---

[4] Audrey Moreland also reported that A.M. used the nickname "Papp" for Cameron Garner.

In July 2013, plaintiffs Christina Garner, Cameron Garner, J.D.G. (the Garners' minor son), Audrey Moreland, Charles Moreland (Audrey's husband), and Dreama Baker (whose guardian is Ms. Moreland) filed suit alleging claims against various parties involved in the investigation and prosecution of A.M.'s sexual abuse allegations. The plaintiffs brought claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments, as well as claims for defamation, malicious prosecution, false arrest, false imprisonment, gross negligence, negligent and intentional infliction of emotional distress, and loss of consortium. The district court granted the defendants' motion for summary judgment on all claims. Before this court, the plaintiffs appeal only the district court's dismissal of their claims for malicious prosecution, false arrest, and false imprisonment, as well as their § 1983 claims that the defendants' policies and practices violated their procedural and substantive due process rights.

II.

A.

This court reviews a district court's grant of summary judgment *de novo*. *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (citation omitted). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences must be construed in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A mere scintilla of evidence is not enough to create a genuine issue of material fact. *Id.* at 252.

B.

The plaintiffs argue that the district court improperly granted summary judgment to the defendants on their § 1983 malicious prosecution and false imprisonment and arrest claims.

To prove a § 1983 malicious prosecution claim, the plaintiffs must establish the following: (1) a criminal prosecution was initiated against them and the defendants made, influenced, or participated in the decision to prosecute; (2) *there was no probable cause for the criminal prosecution*; (3) as a consequence of the legal proceeding, the plaintiffs suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiffs' favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). To prove a § 1983 claim of false imprisonment and arrest, the plaintiffs must "prove that the [defendants] lacked probable cause to arrest [them]." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). To prevail on either their malicious prosecution or false arrest and imprisonment claims, plaintiffs must present sufficient evidence that probable cause did not exist.

"An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983," *id.*, unless the law enforcement officer or officers "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)) (internal quotation marks omitted). Further, it is well settled that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause."

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citations and internal quotation marks omitted). This court applies an exception where the indictment was wrongfully obtained by defendants who deliberately or recklessly presented false testimony to the grand jury. *See Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015); *Robertson*, 753 F.3d at 616.

In this case, a grand jury was convened, evidence was presented to it, and the grand jury returned an indictment against the plaintiffs. The plaintiffs failed to present evidence that the defendants deliberately or recklessly presented false testimony to the grand jury. They fail even to produce a grand jury transcript[5]; because of this failure, neither the district court nor this court was informed of precisely what was said to the grand jury or by whom. The mere allegation that witnesses did not testify in good faith before a grand jury is insufficient to overcome the presumption of probable cause obtained upon the return of a grand jury indictment. *See Miller v. Davis*, No. 15-3923, 2016 WL 3472004, at *5 (6th Cir. June 24, 2016); *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008). Nor do the plaintiffs present even a scintilla of evidence from which we could infer that the defendants knowingly or recklessly presented false information to the grand jury.

The plaintiffs instead argue that because, allegedly, the investigation was deficient and because the evidence presented to the grand jury included A.M.'s statements to his mother and Reedy that were later excluded by the state trial court, the grand jury's finding of probable cause should not stand. The plaintiffs cite no case law in support of this proposition.

We decline the invitation to create a new exception to the presumption of probable cause based on a grand jury indictment. First, and most importantly, the standard required for probable cause is lower than that required for conviction. *See Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (comparing "the modest requirement that probable cause exist to

---

[5] The plaintiffs do not argue that they tried but were unable to obtain a transcript.

prosecute someone and the stringent requirement that proof beyond a reasonable doubt exist to find him guilty"). "[N]ot every failed criminal prosecution will sustain a subsequent malicious-prosecution suit." *Id.* (quoting *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)). Second, although imperfect, the investigation was not as deficient as the plaintiffs suggest. For example, although Reedy failed to record her interview with A.M., this was her usual course of conduct, and A.M. reported to her almost the exact same allegations as Harrod initially reported to the police. That Harrod reported that A.M. told her about "Pop Pop," though A.M. spoke of "Pap" or "Pap Pap" to Reedy, is not the smoking gun that the plaintiffs suggest—what child has not called his mother alternately "Mama," "Mommy," or "Mom"? Third, because the defendants had no reason to doubt the truth of A.M.'s statements—indeed, the nearly identical statements reported by Harrod and those given to Reedy gave them reason to trust the truth of the allegations all the more—a failure to present the evidence to the grand jury could have potentially endangered the safety of a minor. That the trial court later found A.M.'s statements to be inadmissible does not determine their actual truth or falsity, especially in a case such as this where the plaintiffs have failed to attach the trial court's rationale, *i.e.*, whether the decision was based on hearsay or incompetency or both.

In sum, the plaintiffs clearly failed to satisfy their burden to rebut the presumption of probable cause created by the grand jury's indictment.

C.

The plaintiffs next argue that the policies and practices of the defendants resulted in the violation of their procedural and substantive due process rights. According to the plaintiffs, the defendants violated the plaintiffs' alleged "constitutionally protected right to have some minimal level [of] competency be demonstrated by those who seek to investigate and subsequently

prosecute them for crimes," though the plaintiffs fail to cite a single case in support of this proposition, nor do they reference the policies or practices of the entity defendants that allegedly deprived them of this right. Appellant Br. at 12–16. Similarly, the plaintiffs do not clarify whether they are asserting a procedural or a substantive due process violation.

In order to prevail on a § 1983 claim against the entity defendants under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the plaintiffs must establish that (1) their constitutional rights were violated and (2) "the municipality's policy or custom led to the violation." *Robertson*, 753 F.3d at 622. "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Because the plaintiffs cannot establish that their constitutional rights were violated, their claim fails at step one.

To prove a § 1983 procedural due process claim, the plaintiffs must establish (1) that they have a life, liberty, or property interest protected by the Due Process Clause, (2) that they were deprived of this protected interest, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). The district court construed the plaintiffs' claims "to allege some type of liberty or property right in the way in which Reedy and Detective Curry investigated A.M.'s sexual abuse allegations." DE 63, Op. & Order, Page ID 2103. We do the same.

Setting aside all the facts that demonstrate that the state actors involved in the investigation of this case demonstrated far more than a "minimal level of competency," there is no constitutionally protected right to the manner in which a criminal investigation is conducted. Though at least one other circuit has held that there is "a clearly established constitutional due

process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government," *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc), the plaintiffs have not pled any facts to prove the deprivation of such a right. Moreover, assuming that the plaintiffs provided sufficient facts to establish that the investigation was incompetent or negligent, an "incompetent or negligent investigation" is insufficient to establish a constitutional violation. *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001). As stated by the district court, "there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way." DE 63, Op. & Order, Page ID 2104 (quoting *Devereaux*, 263 F.3d at 1075). Accordingly, even if the plaintiffs had produced evidence to establish a negligent or deficient investigation, their procedural due process claim would fail.

To prove a § 1983 substantive due process claim, the plaintiffs would need to establish either (1) "deprivations of a particular constitutional guarantee," or (2) government actions that "shock the conscience." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted). Here, the plaintiffs have not alleged any cognizable constitutional interest, nor have they produced any evidence of "conscience shocking" behavior. *See Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (finding that the "'shocks the conscience' standard sets a high bar: 'Substantive due process affords only those protections so rooted in the traditions and conscience of our people as

9

to be ranked as fundamental.'" (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012))). Not only did probable cause exist in this case, but the defendants had a duty to protect four-year-old A.M. from potential child abuse, and their pursuit of A.M.'s allegations against Cameron Garner does not shock the conscience; rather, the defendants acted in a rational and reasonable manner based on the circumstances. Accordingly, the government actors in this case violated no substantive due process right owed the plaintiffs by the Constitution.[6]

## III.

For the reasons discussed above, we affirm the judgment of the district court.

---

[6] Because the district court did not err in granting summary judgment to the defendants on all claims, it is unnecessary to reach the issue of whether the defendants are immune from these claims.