NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0471n.06

No. 16-2432

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LARRY RICHARDSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CATHERINE BAUMAN, Warden, et al. | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, KETHLEDGE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Larry Richardson, a prisoner of the Michigan Department of Corrections, appeals the grant of summary judgment to the defendants in his action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. Richardson originally brought the action against 22 defendants. Of those, eight employees of the Department remain: Jacqueline Nadeau, assistant deputy warden of Chippewa Correctional Facility; Donald Mansfield, resident unit manager (RUM) at Chippewa; Fredrick Robinson, assistant deputy warden at Chippewa; Terry Bjorn (Swift), RUM at Chippewa; Catherine Bauman, warden of Alger Correctional Facility; Scott Sprader, former assistant deputy warden at Alger; Daniel Lesatz, deputy warden at Alger; and Lyle Rutter, former inspector and assistant deputy warden at Alger. Richardson claimed that the defendants were deliberately indifferent to a grave risk of harm posed to Richardson by members of the MS-13 gang, who

began threatening him in 2008 and stabbed him twice—once above his left eye while he was housed at Kinross Correctional Facility, and a second time in his back after he had been transferred to Chippewa and made several unsuccessful requests for protection. The district court entered summary judgment in favor of the defendants, and Richardson now appeals, arguing that he identified genuine disputes of material fact that should have prevented the entry of summary judgment. But, because most of the pertinent evidence offered by Richardson consisted of hearsay, we conclude that he has not established genuine disputes of material fact on all necessary elements of his claim, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to Richardson, while he was housed by the Department in Kinross in 2008, members of the MS-13 gang (or non-member "go-between" representatives of the gang) began to approach him, threatening that the gang would not permit him to be housed at Kinross, although he gave no reason for the threats. At the end of January 2009, Richardson asked that prison officials protect him from threats at Kinross. The officials denied Richardson's request because Richardson could not identify prisoners who were supposedly menacing him and, therefore, a need for protection could not be substantiated. According to Richardson, members of MS-13 engaged in extortion, requiring him to pay approximately $30 per month in commissary goods in order not to be harmed by the gang.

In September 2009, Richardson was unable to pay the gang and he alleges that, as a result, a member of MS-13 stabbed him in the forehead, above his left eye. Richardson was sent to the hospital for medical attention, after which he was placed in protective isolation at Kinross for approximately two days and then transferred to Chippewa. Richardson's transfer paperwork included a notation that he had been assaulted at Kinross.

Shortly after Richardson arrived at Chippewa, he alleged, an MS-13 gang member (or go-between) told him he had until October 3 to leave. The prison had also received a letter purporting to be from the gang, stating that Richardson was not allowed in the prisons at Kinross, Straits, Newberry, or Chippewa and had until October 3 to leave Chippewa or he would be killed. On September 29, 2009, Richardson was placed in temporary protective segregation while the prison reviewed his request for protection; on September 30, 2009, his request was denied because, once again, he was unable to provide adequate information about the threats against him, and prison officials did not consider the letter to be authentic. Richardson was placed back in general population.

On October 24, 2009, Richardson was stabbed again, this time in the back of his shoulder. Richardson was again placed in protective segregation on October 26, 2009, this time after giving the nicknames of two inmates, "Ghost" and "Lil Deablo," as individuals who had been threatening him, but the prison was unable to identify any prisoners who went by those names. Prison officials noted that they "[could] not disprove" that Richardson's injury was caused by an assault, although they suspected that it was self-inflicted, and ordered him to remain in temporary segregation until he was transferred to Newberry, an "Alternative Level II" facility.

At Newberry, Richardson alleged he was again threatened by members of the MS-13 gang and he requested protective segregation on the same day he was transferred. An investigation report made pursuant to this request noted that Richardson could not provide any information on the prisoners who had threatened him but that he further stated that a "MS-13 gang member had raped his wife and he walked in on the crime while in progress. Richardson related that he blacked out after that and would not say anymore [sic] about the alleged incident."

Prison officials denied Richardson's request, concluding that Richardson could not provide any verifiable information that he was threatened at Newberry. Due to his repeated requests for protection, Richardson's security classification was increased from two to four. He therefore was transferred to Alger Correctional Facility, a level-four facility.

In April 2011, Richardson allegedly was informed that additional threatening letters had been received by Alger. Although prison officials had deemed them fraudulent, Richardson requested protection. The request was again denied, and Richardson grieved the denial. In November 2011, prison officials attempted to transfer Richardson back to Newberry, but Richardson refused the transfer.

Richardson filed suit in the district court in November 2012. A motion for summary judgment filed by the defendants in September 2014 was granted in part and denied in part. The remaining defendants filed the motion for summary judgment at issue in this appeal, arguing that there are no genuine disputes of material fact as to Richardson's Eighth Amendment claims. The magistrate judge recommended that summary judgment be granted in favor of all defendants, and the district court adopted the magistrate judge's report and recommendation.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Mullins v. Cyranek*, 805 F.3d 760, 764 (6th Cir. 2015). In order to withstand summary judgment, Richardson must be able to demonstrate that "the evidence presents a sufficient disagreement to require submission to a jury." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016)(citation omitted). A court shall grant summary judgment if, construing all evidence and drawing all reasonable inferences from the underlying facts in favor of the nonmoving party, there is no genuine dispute as to any facts material to the claim, and the movant is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

We must review the record in the light most favorable to Richardson. However, a "mere 'scintilla'" of evidence that supports the non-moving party's position "is insufficient to defeat summary judgment." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 724 (6th Cir. 2016) (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012)), *cert. denied*, 137 S. Ct. 1206 (2017). The evidence used to establish that there exist genuine disputes of material fact need not be internally consistent. *See Schreiber v. Moe*, 596 F.3d 323, 333–34 (6th Cir. 2010). However, it must be admissible in content, even if not in form. *See Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 959–60 (6th Cir. 2014).

To withstand summary judgment on his Eighth Amendment claims, Richardson must point to evidence that demonstrates that (1) he was incarcerated under conditions posing a substantial risk of serious harm (the "objective component"); and (2) the defendants were deliberately indifferent to the substantial risk of harm (the "subjective component"). *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

**Objective Prong**

Reviewing the record in the light most favorable to Richardson, we conclude that he demonstrated a genuine dispute as to whether the threats he faced were objectively serious. Although Richardson was less than forthcoming with prison officials when requesting protection about why the MS-13 gang would have targeted him, at least one prison document reflects that Richardson may have had a history with the gang. Assuming, as we must, that the threats from MS-13 were genuine and that Richardson's wounds were not self-inflicted, the record permits a

finding that Richardson faced a substantial risk of serious harm.  We note, however, that here is no proof, other than hearsay, that the MS-13 gang was actually present in the prisons in question.

**Subjective Prong**

The closer question is whether Richardson has demonstrated a genuine dispute as to each defendant's culpable state of mind.  The subjective prong requires a finding of deliberate indifference; that is, that the defendants both were aware of facts from which they could have inferred that Richardson faced a substantial risk of serious harm, and that they actually drew that inference.  *See Farmer*, 511 U.S. at 837.  The defendants' "conduct must . . . be 'obdurate' or 'wanton'—exhibiting recklessness or callous neglect."  *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986)).  Therefore, we must determine whether Richardson "introduced sufficient evidence to convince a trier of fact that [the defendants were] aware of a substantial risk of serious harm" posed to Richardson, and that they nevertheless ignored that harm.  *See Green v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

The primary reason the defendants put forward for denying Richardson's requests for protection is that Richardson was unable to provide adequate information regarding the identities of inmates threatening him, rendering the threats unverifiable.  Richardson is correct that a defendant need not know with perfect specificity what the risk of harm is, that is, he need not "know a prisoner would, with certainty, be harmed, or that a particular prisoner would be harmed in a certain way."  *Curry v. Scott*, 249 F.3d 493, 507 (6th Cir. 2001).  However, a defendant must "be 'aware of an obvious, substantial risk to inmate safety.'"  *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 354 (6th Cir. 2001)  Here, the defendants maintained that, despite investigating Richardson's requests and the threats he reported, there was insufficient information or evidence to substantiate his reports.  Richardson responded to this contention by

alleging that obtaining other prisoners' information could have been difficult or dangerous, if not impossible. Richardson may also have had a problem with names in general: during his deposition, he was apparently unable to give the name even of his bunkmate.

On the other hand, the defendants invited Richardson to provide information short of perfect identification—including appearances and other identifying characteristics—but Richardson refused to provide that information as well. Moreover, the defendants took other investigative steps to try to verify Richardson's claims, including reviewing video evidence to attempt to see who was around when Richardson was stabbed and talking to prison administrators who were responsible for tracking and detailing gang activity in the prisons.

Unfortunately for Richardson, the majority of the evidence in the record that would tend to demonstrate the defendants' culpability consists of inadmissible hearsay. Richardson cites to an alleged statement made to him by a prison official that, following his second stabbing, he had to fill out a voluntary segregation form rather than be placed in involuntary segregation in order for the officials to cover their tracks; to an alleged statement by prison officials that they would never grant Richardson protection and would prevent Richardson from filing suit; and to statements made by prison officials that they would refuse to file grievances, among others. But these statements were being offered to establish that the speakers so believed or so acted—in other words, to prove the truth of the matter asserted. *See Shazor* at 959–60. As such, these statements by defendants and other prison officials, as relayed by Richardson, cannot be used to overcome summary judgment.

When the record is stripped of the inadmissible evidence, what Richardson is left with are the letters that purport to be from the MS-13 gang, his multiple requests for protection, and the two times he was stabbed. Prior to the second time that Richardson was stabbed, there was

clearly not sufficient evidence to create a genuine dispute of material fact as to whether the defendants were deliberately indifferent toward a risk of harm to Richardson. The evidence available to the Chippewa facility defendants amounts to an isolated incident of an inmate being attacked by an unknown assailant at another facility and several unverified requests for protection. Although it is arguable that prison officials at Chippewa were negligent with respect to their handling of Richardson's requests for protection, there is insufficient evidence for a reasonable jury to infer that they were deliberately indifferent. At each of their depositions the Chippewa defendants stated unequivocally that after investigating Richardson's request for protection, they did not believe he faced a genuine threat, and Richardson has cited no admissible evidence regarding their subjective beliefs, as he must to survive summary judgement.

After Richardson was stabbed for the second time, the questions is perhaps closer, but without the assistance of his hearsay evidence, Richardson has failed here, too, to provide evidence sufficient to withstand summary judgment. The only actions at issue after 2009 are Richardson's transfer to Newberry from Chippewa, Richardson's request for protection in Newberry, Richardson's 2011 request for protection at Alger, and the attempted transfer of Richardson from Alger to Newberry, which he refused.[1]

**Transfer to Newberry**

Richardson has not pointed to any evidence that the Chippewa defendants consciously disregarded a threat to him at Newberry when they transferred him there. It appears from the record that the transfer was done in response to his stabbing. Nor has Richardson established that the person responsible for selecting Newberry knew of and disregarded a threat to his safety

---

[1] The four correctional facilities involved in this litigation are all located in Michigan's Upper Peninsula, and several of the prison officials noted that inmates frequently seek to obtain transfers to prisons located downstate in order to facilitate family visits and the like.

there—indeed, his transfer order to Newberry was approved by a "B. Scott," who is not a defendant in this action.

**Request for Protection at Newberry**

None of the defendants in this case were responsible for investigating, granting, or denying safety requests at Newberry.

**Request for Protection at Alger**

In 2011, after learning of additional threatening letters purporting to be from the MS-13 gang, Richardson requested protection at Alger. Prison officials did not believe that the threatening letters were genuine, and Richardson's request was denied. However, the prison did place Richardson into the reintegration unit, a closely supervised unit that Richardson stated allowed him to "monitor" the people around him and made him feel safer. No physical harm befell Richardson during his time at Alger. Richardson has offered no non-hearsay evidence suggesting that any Alger defendant believed there was a verified threat to Richardson and refused him protection nevertheless. Without more, there is no genuine dispute as to any of the Alger defendants' deliberate indifference with respect to Richardson's request for protection.

**Attempted Transfer From Alger to Newberry**

All evidence offered by Richardson to suggest that the attempt to transfer him back to Newberry from Alger was the result of deliberate indifference is inadmissible hearsay. Richardson maintains that the initiation of transfer proceedings was intended as retaliation against him for a grievance he had filed. However, no other evidence supports this claim or a belief by the Alger defendants that there was a risk to Richardson at Newberry. Once again, Richardson has not pointed to sufficient evidence to raise a *genuine* dispute as to whether the defendants acted with deliberate indifference.

**CONCLUSION**

We have held in the summary judgment context that "[t]he argument that all of these trees do not add up to a forest, but should simply be viewed as a collection of trees, may contain merit at trial before a finder of fact, but it is unavailing at the summary judgment stage." *Curry*, 249 F.3d at 508–09. It will not always be the case that defendants can escape liability because their responses to potential harm appear adequate independently, when together the pattern reasonably suggests that they should have been subjectively aware of a serious risk of harm. Here, however, the trees seem to be just trees. The defendants may have been negligent, or even unnecessarily stubborn in failing to believe that a threat to Richardson's safety existed, but the record does not provide sufficient evidence to support a conclusion that any defendant consciously disregarded a recognized risk of harm.

We therefore AFFIRM the judgment of the district court.