NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0423n.06

Nos. 21-6163/6167/6169

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 02, 2023

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| GINNY HUMPHREY, as parent and legal guardian of minor child, O.H. [21-6167], | ) ) ) |
|     Plaintiff, | ) ) |
| BARRY MARTINDELL, as parent and legal guardian of minor children, A.M. and C.M. [21-6163]; COURTNEY MARTINDELL [21-6163]; MICHAEL GREGORY DERRICK, as Guardian ad Litem of minor child, O.H. [21-6167]; ANGEL GIBSON, as parent and legal guardian of minor child, B.W. [21-6169], | ) ) ) ) ) ) ) ) ) |
|     Plaintiffs-Appellants, | ) ) |
| v. | ) ) |
| RICKIE FRIAR, et al., | ) ) |
|     Defendants, | ) ) |
| RITA STANBACK and FRANK TENNANT, individually and in their official capacities, | ) ) ) |
|     Defendants-Appellees. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. This case is before us a second time. The plaintiffs are parents of children whom Rickie Friar abused before being sent to a federal penitentiary for child-sex crimes. Plaintiffs now appeal the district court's grant of summary judgment to Rita Stanback and Frank Tennant of plaintiffs' claims of supervisory liability under 42 U.S.C. § 1983. We affirm largely for the reasons stated by the district court.

I.

In reviewing the district court's grant of summary judgment to the defendants, we consider the relevant evidence in the light most favorable to the plaintiffs. *See Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016).

Rickie Friar was a reserve police officer with the Millington, Tennessee Police Department. In 2013, he drove his police cruiser to a neighborhood gathering, where he wore his uniform and introduced himself to residents as a police officer. One of those residents was plaintiff Ginny Humphrey, who attended the gathering with her young daughter, whom we call "O.H." Another resident was Scott Walker (former husband of plaintiff Angel Gipson), who attended with his daughter "B.W." During the neighborhood event—ostensibly to teach the children about the consequences of criminal behavior—Friar handcuffed O.H., B.W, and some other children, placed each of them in the back of his cruiser, and photographed them. A few days later, Friar returned to the neighborhood and delivered photos of the children to their parents.

Thereafter, the minor children in this case occasionally saw Friar directing traffic or handing out flyers in his police uniform. But otherwise, after the neighborhood gathering, Friar interacted with the plaintiffs and their children in his personal capacity—while off-duty, in civilian clothes, and using his personal vehicle.

Friar spent months developing personal relationships with the plaintiffs and their children. In the case of Humphrey and O.H., Friar regularly visited Humphrey in the weeks after the neighborhood gathering, and they became friends. After a few months, Humphrey routinely allowed Friar to take O.H. to the YMCA, where Friar had a membership allowing him and his guests to use the pool. Humphrey also allowed Friar to take O.H. to carnivals, restaurants, and the park; and Friar, for his part, bought gifts for O.H. and helped Humphrey finance her purchase of a

car. Eventually, Humphrey allowed Friar to take O.H. to his home, around 50 times or so, usually for overnight stays, and without any other adult present. There, Friar sexually abused the girl.

Scott Walker and B.W. had been going to the YMCA together for months before the neighborhood gathering—indeed they first met Friar at the YMCA, where Walker had a membership. They continued to go to the YMCA together after the gathering, and a few months later Friar inappropriately touched and photographed B.W. while they were at the pool.

Plaintiff Barry Martindell and his daughters, A.M. and C.M., had not been present at the neighborhood gathering, but O.H. later introduced the Martindells to Friar at the YMCA. Martindell was at first wary of Friar, but Humphrey vouched for him and described him as a "father figure." Over the next several months, Martindell and Friar became friendly after learning that they shared some common interests. Martindell regarded Friar as a "Santa Claus type guy" during this period. Eventually, in October or November 2014, Martindell allowed C.M. to visit Friar's home, where he played "policeman" and swung his nightstick around. Martindell ended his daughters' interactions with Friar the following month, however, after seeing Friar take photographs of the girls' groin areas while they were all at a McDonald's.

In July 2015, Friar's housekeeper found photographs of him sexually abusing young girls. He later pled guilty in federal court to various child-sex offenses, for which the court sentenced him to 26 years in prison.

The parents thereafter brought this suit against the City of Millington, three former chiefs of police, and three former mayors, asserting claims under 42 U.S.C. § 1983. The district court later dismissed the claims against all defendants, excepting Friar, for failure to state a claim. On appeal, we affirmed most of the district court's decision, but reversed as to Chiefs Stanback and

Tennant, holding that the plaintiffs had plausibly alleged claims for supervisory liability against them. *See Humphrey v. Friar*, 792 F. App'x 395 (6th Cir. 2020).

The district court later granted summary judgment to Stanback and Tennant, holding that, as a matter of law, Friar had not acted "under color of" state law when he harmed the plaintiffs' daughters. This appeal followed.

II.

We review de novo the district court's grant of summary judgment. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018).

The only claims at issue in this appeal are plaintiffs' claims of supervisory liability against Stanback and Tennant. Yet § 1983 does not provide for vicarious (or "respondeat superior") liability; a defendant can be liable under § 1983 only for his own actions or omissions, not for those of anyone else. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Thus, a subordinate's violation of the Constitution does not, standing alone, render his supervisor liable for those actions. Instead, under § 1983, a supervisor is liable for a subordinate's constitutional violation only if the supervisor expressly or tacitly authorized it. *Id.*; *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).

The dispute in this appeal, however, largely concerns an antecedent question: namely, whether Friar's abuse of the plaintiffs' children amounted to a violation of the Constitution, as opposed to only a violation of federal and state criminal law. For a "prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen*, 433 F.3d at 470. Here, whether Friar's conduct violated the Constitution—specifically the Fourteenth Amendment's Due Process Clause—depends on whether he was a state actor when he abused the plaintiffs' children. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).

As an initial matter, the parties and the district court alike frame this question somewhat differently than we do. Specifically, the district court in its opinion, and the parties in their briefs in this appeal, address the statutory question whether Friar acted "under color of" state law when he committed that abuse, *see* 42 U.S.C. § 1983, rather than the question whether Friar was a state actor then. Those questions are closely related, but distinct: state action under the Fourteenth Amendment is always action under of color of state law for purposes of § 1983, *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 934–35 (1982); but not all action under color of state law is necessarily state action. *See id.* at 935 n.18 (stating that not "all conduct that satisfies the color-of-state-law requirement would [necessarily] satisfy the Fourteenth Amendment requirement of state action."). That technical distinction makes no practical difference in this appeal, however, because here the analysis for both questions is the same.

Turning to the merits, we affirm the district court's decision for substantially the reasons stated in the court's (again) notably thorough opinion. As described above, Friar's abuse of the plaintiffs' children came long after the sole occasion (a 2013 neighborhood gathering) in which he interacted with any of the plaintiffs in his capacity as a reserve police officer. And in the months that followed that gathering—as the district court's opinion explains in detail—Friar assiduously cultivated a relationship with each of these plaintiffs that was entirely personal. Friar then exploited those personal relationships—in his home, at the pool, and at a McDonald's—to abuse the plaintiffs' children. True, Friar's status as a reserve police officer helped open the door to these relationships. But Friar's interactions with the plaintiffs as a police officer were miniscule compared to his interactions with them in his personal capacity. And the offending actions themselves were undisputedly taken for Friar's purposes alone. As a matter of law, therefore, none

of the abusive actions at issue here were "'fairly attributable to the State.'" *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022) (quoting *Lugar*, 457 U.S. at 937).

The district court's judgment is affirmed.